**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| UNITED PROPERTY & CASUALTY INSURANCE, ) | |
| ) | |
| Plaintiff, ) | No. 2:19-cv-01856-DCN |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ALLEN P. COUTURE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

These matters are before the court on defendant Allen P. Couture's ("Couture")

motion to compel, ECF No. 24, and plaintiff United Property & Casualty Insurance's

("UPC") motion for protective order and motion to quash, ECF Nos. 31, 33.  For the

reasons set forth below, the court grants in part, denies in part, and withholds ruling until

documents requested are submitted for an in camera review by the court on Couture's

motion to compel, denies UPC's motion for protective order, and finds as moot UPC's

motion to quash.

## I.  BACKGROUND

UPC issued a homeowner's insurance policy ("Policy") to Couture providing

coverage related to Couture's primary residence located at 1344 Winterberry Avenue,

Goose Creek, South Carolina ("Residence"), for the policy period October 15, 2018

through October 15, 2019.  ECF No. 1-1.  On his application, Couture responded to

"Prequalification Question #7" that the Residence did not have any pre-existing damage.

ECF No. 25-2 at 4.  Prior to purchasing the Residence, an inspection was performed that

found multiple issues with the Residence including damage to the subfloor in multiple

1    locations and leaking impacting the shut off value.  ECF No. 5-1.  The seller of the

2    Residence fixed those issues as requested by Couture, and upon re-inspection all water

3    leaks were fixed in a manner deemed to be "satisfactory."  ECF No. 5-2.

4        On March 17, 2019, Couture became aware of a water leak in the washing

5    machine water supply line in the laundry room that caused significant water damage to

6    kitchen cabinets, the subfloor in laundry room, and laundry room walls.  As a result,

7    Couture filed a claim under the Policy.  ECF No. 24 at 2.  On March 22, 2019, UPC sent

8    a third-party field adjuster, Mike Howell, to perform a physical inspection of the

9    Residence on its behalf, at which time he created a photo report to document the damage

10   that occurred at the Residence ("unredacted photo report").  After receiving the

11   unredacted photo report from Mike Howell, UPC denied the claim via a letter dated April

12   4, 2019.  ECF No. 24-1.  On April 9, 2019, UPC sent Couture a letter cancelling the

13   Policy due to a material misrepresentation of fact.  ECF No. 24-2.  On April 19, 2019,

14   counsel for Couture issued a letter to UPC disputing a material misrepresentation and

15   requesting additional information related to the denial of the claim and the cancellation of

16   the policy.  ECF 25-4.  On May 2, 2019, UPC issued a second letter explaining why the

17   claim was denied.  ECF No. 24-3.  After the parties communicated about whether

18   additional information was going to be provided by UPC to Couture regarding the denial

19   of the insurance claim, ECF No. 25-6, UPC issued a third letter to Couture explaining the

20   reason for the denial of the insurance claim on May 30, 2019, ECF No. 25-7.

21       On June 28, 2019, UPC brought suit against Couture for a declaratory judgment

22   on the denial of the claim.  ECF No. 1.  On August 8, 2019, Couture answered the

23   complaint and brought a counterclaim against UPC alleging breach of contract, bad faith

1    and negligence.  ECF No. 5.  On August 16, 2019, Couture served Requests for

2    Production ("RFP") on UPC.  ECF No. 24-7.  On September 27, 2019, UPC responded to

3    Couture's RFP.[1]  On October 21, 2019, Couture sent a good faith letter to UPC ("first

4    Rule 11 letter") in order to address alleged deficient responses and objections raised by

5    UPC's responses to the RFP.  ECF No. 24-8.  UPC then provided a supplemental

6    response to Couture's RFP, an amended privilege log, and a letter explaining their

7    responses on November 15, 2019.  ECF No. 24-9; ECF No. 24-11; ECF No. 24-12.  On

8    December 6, 2019, Couture sent another good faith letter to UPC ("second Rule 11

9    letter") in order to address alleged deficient responses and objections raised by UPC's

10   supplemental responses to the RFP.  ECF No. 24-13.  On December 20, 2019, UPC

11   provided Couture with a letter that it had sufficiently answered all questions and would

12   not be providing any more discovery responses.  ECF No. 24-14.

13         On January 13, 2020, Couture filed his motion to compel.  ECF No. 24.  On

14   January 27, 2020, UPC responded to Couture's motion to compel.  ECF No. 25.  On

15   February 3, 2020, Couture replied to UPC's response, ECF No. 27, to which UPC filed a

16   supplemental response and a motion for protective order on February 11, 2020.  ECF No.

17   31.  On March 3, 2020, UPC filed a motion for protective order and motion to quash.

18   ECF No. 33.  Couture responded to UPC's motion for protective order and motion to

19   quash on April 7, 2020.  ECF No. 39.  On May 7, 2020, the court held a telephonic

20   hearing on Couture's motion to compel and UPC's motion for protective order and

21   motion to quash.  These motions have been fully briefed and are now ripe for the court's

22   review.

---

[1]  UPC's initial response to Couture's RFP was not provided to the court.

1    ## II.  STANDARD

2    ### A.  Discovery

3    Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by

4    court order, "[p]arties may obtain discovery regarding any non-privileged matter that is

5    relevant to any party's claim or defense and proportional to the needs of the case,

6    considering the importance of the issues at stake in the action, the amount in controversy,

7    the parties' relative access to relevant information, the parties' resources, the importance

8    of the discovery in resolving the issues, and whether the burden of expense of the

9    proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) (note that the

10   2015 Amendments omit the phrase "reasonably calculated to lead to the discovery of

11   admissible evidence").  Notably, "[i]nformation within this scope of discovery need not

12   be admissible in evidence to be discoverable."  Id. "The scope and conduct of discovery

13   are within the sound discretion of the district court."  Columbus–Am. Discovery Grp. v.

14   Atl. Mut. Ins. Co., 56 F.3d 556, 568 n. 16 (4th Cir.1995) (citing Erdmann v. Preferred

15   Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir.1988)); see also U.S. ex rel. Becker v.

16   Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir.2002) (stating that district

17   courts are afforded "substantial discretion . . . in managing discovery").

18   ### B.  Motion to Compel

19   The Federal Rules of Civil Procedure provide that a party may "obtain discovery

20   regarding any non-privileged matter that is relevant to any party's claim or defense,

21   including the existence, description, nature, custody, condition and location of any books,

22   documents or other tangible things and the identity and location of persons who know of

23   any discoverable matters."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be

1    admissible at trial if the discovery appears reasonably calculated to lead to the discovery

2    of admissible evidence." Id.  Rather, information is relevant and discoverable if it relates

3    to "any matter that bears on, or that reasonably could lead to other matter that could bear

4    on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S.

5    340, 351 (1978).  If a party declines to answer an interrogatory or request for production,

6    the serving party "may move for an order compelling an answer, designation, production,

7    or inspection." Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure,

8    answer, or response, "must be treated as a failure to disclose, answer or respond."  Fed.

9    R. Civ. P. 37(a)(4).  District courts have "wide latitude in controlling discovery and

10   [their] rulings will not be overturned absent a showing of clear abuse of discretion."

11   Ardrey v. United Parcel Service, 798 F.2d 679, 683 (4th Cir.1986); In re MI Windows &

12   Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

13        **C.  Motion for Protective Order**

14        Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery to "any

15   nonprivileged matter that is relevant to any party's claim or defense."  "The court may,

16   for good cause, issue an order to protect a party or person from annoyance,

17   embarrassment, oppression, or undue burden and expense" by forbidding or limiting the

18   scope of discovery.  Fed. R. Civ. P. 26(c)(1).  "The standard for issuance of a protective

19   order is high." Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified,

20   2017 WL 3620061 (D.S.C. Aug. 23, 2017) (quoting Nix v. Holbrook, 2015 WL 631155,

21   at *2 (D.S.C. Feb. 13, 2015).  "The party moving for a protective order bears the burden

22   of establishing good cause." Slager v. Southern States Police Benevolent Association,

23   Inc., 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016) (quoting Webb v. Green Tree

5

1    <u>Servicing, LLC</u>, 283 F.R.D. 276, 278 (D. Md. 2012)).  "Normally, in determining good

2    cause, a court will balance the interest of a party in obtaining the information versus the

3    interest of his opponent in keeping the information confidential or in not requiring its

4    production."  <u>Id.</u> (quoting <u>UAI Tech., Inc. v. Valutech, Inc.</u>, 122 F.R.D. 188, 191

5    (M.D.N.C. 1988)). In other words, the court "must weigh the need for the information

6    versus the harm in producing it."  <u>Id.</u> (quoting <u>A Helping Hand, LLC v. Baltimore Cty.,</u>

7    <u>Md.</u>, 295 F. Supp. 2d 585, 592 (D. Md. 2003).  The district court, however, is afforded

8    broad discretion "to decide when a protective order is appropriate and what degree of

9    protection is required."  <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984).

10    **D.   Motion to Quash**

11          Under Fed. R. Civ. P. 45, a party may serve a subpoena for the production of

12    discoverable material on a non-party.  Rule 45 governs demands upon nonparties for the

13    production of persons or materials, and a subpoena issued under this rule may command

14    a nonparty to "produce designated documents, electronically stored information, or

15    tangible things in that person's possession."  Fed. R. Civ. P. 45(a)(1)(A)(iii).

16    When a party subpoenas a nonparty's attendance at a deposition, the nonparty may move

17    to quash the subpoena under Rule 45, which requires that a district court must quash or

18    modify a subpoena that:

19          (i) fails to allow a reasonable time to comply;
20
21          (ii) requires a person to comply beyond the geographical limits specified
22          in Rule 45(c);
23
24          (iii) requires disclosure of privileged or other protected matter, if no
25          exception or waiver applies; or
26
27          (iv) subjects a person to undue burden.
28

6

1    Fed. R. Civ. P. 45(d)(3)(A).  The scope of discovery under a subpoena is the same as the

2    scope of discovery under Fed. R. Civ. P. 26(b).  Cook v. Howard, 484 F. App'x 805, 812

3    (4th Cir. 2012).  "[T]he burden of proof is with the party objecting to the discovery to

4    establish that the challenged production should not be permitted."  Sherrill v. DIO

5    Transp., Inc., 317 F.R.D. 609, 612 (D.S.C. 2016).  A nonparty who seeks to withhold

6    subpoenaed information on the basis that it is privileged must (1) expressly assert the

7    claimed privileged and (2) describe the nature of the withheld information "in a manner

8    that, without revealing information itself privileged or protected, will enable the parties to

9    assess the claim."  Fed. R. Civ. P. 45(e)(2)(A).  A district court must quash a subpoena

10    upon timely motion when the subpoena "subjects a person to undue burden."  Fed. R.

11    Civ. P. 45(d)(3)(A)(iv).  "The determination of undue burden is within the discretion of

12    the district court."  United States ex rel. Lutz v. Berkeley Heartlab, Inc., 2017 WL

13    5952689, at *1 (D.S.C. Nov. 29, 2017).

14                                    **III.  DISCUSSION**

15        **A.  Motion to Quash**

16            UPC argues that the court should temporarily grant its motion to quash until the

17    court rules on Couture's motion to compel.  ECF No. 33 at 3–4.  UPC's motion to quash

18    is based on Couture's subpoena to Mike Howell, who authored the unredacted photo

19    report, to produce the unredacted photo report and any other reports Mr. Howell made

20    regarding his inspection of the Residence and to testify about the contents of those

21    documents produced.  ECF No. 33-2.  The subpoena originally required Mr. Howell to

22    produce the unredacted photo report by March 12, 2020 and to give a deposition on

23    March 18, 2020.  Id.  At the hearing, both parties stipulated that Mr. Howell did not have

1    any of the documents requested in his possession, and that the date of his deposition has

2    been moved to June 23, 2020.  ECF No. 39 at 1.  Since both parties stipulated at the

3    hearing that the issues involving Mr. Howell's subpoena have been resolved, the court

4    finds as moot UPC's motion to quash.

5        **B.  Timeliness**

6        As a threshold matter, UPC argues that Couture's motion to compel does not meet

7    the requirements under Local Civil Rule 37.01.  ECF No. 25 at 2. Local Civil Rule

8    37.01(A) provides as follows:

9            Motions to compel discovery must be filed within twenty-one (21) days
10           after receipt of the discovery response to which the motion to compel is
11           directed or, where no response has been received, within twenty-one (21)
12           days after the response was due.  If counsel are actively engaged in attempts
13           to resolve the discovery dispute, they may agree to extend the time to
14           comply with the discovery request so long as the extension does not place
15           the due date beyond thirty (30) days before the deadline for completion of
16           discovery as set by the scheduling order. See also Local Civ. Rule 29.01
17           (D.S.C.).  This extension will automatically extend the deadline for the
18           motion to compel by an equal amount of time.  The extension shall be
19           confirmed in writing. In the event a later motion to compel is filed, the
20           correspondence confirming the extension shall be attached.

21

22   Local Civ. Rule 37.01(A).  UPC contends that the last discovery response provided to

23   Couture was on November 15, 2019, and because Couture did not obtain an extension

24   from UPC nor has Couture provided the court with written evidence of such extension,

25   the court should deny Couture's motion as untimely.  ECF No. 25 at 3; ECF No. 24-12.

26   Although UPC concedes that "the attorneys communicated after that date about various

27   issues", UPC maintains that "there was never an agreement to extend the rule in writing

28   as is required nor were any subsequent responses served."  ECF No. 25 at 2.  Couture

29   argues that the motion to compel was timely filed because it filed it within 21 days of

1    December 20, 2019, the date on which it received UPC's letter in response to Couture's

2    second Rule 11 letter.  ECF No. 27 at 1–2; ECF No. 24-13; ECF No. 24-14.

3            While under a strict interpretation of Local Civil Rule 37.01 the court could find

4    that Couture was untimely in filing its motion to compel, South Carolina district courts

5    have "discretion to consider an untimely motion to compel if the movant offers an

6    acceptable explanation for the motion's tardiness." U.S. ex rel. Becker v. Westinghouse

7    Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (quotations and alterations

8    omitted).  Here, the parties engaged in continued discovery negotiations as evidenced by

9    Couture's letter to UPC on December 6, 2019 regarding continued alleged deficiencies

10   from UPC's discovery responses sent on November 15, 2019, ECF No. 24-13, UPC's

11   email to Couture on December 9, 2019 requesting an extension of time to respond to the

12   December 6, 2019 letter, Couture's granting of that request on the same day, ECF No.

13   27-1, and UPC's letter sent to Couture on December 20, 2019 that stated that, "UPC's

14   position that at this juncture [is] our response[s] are complete . . . ", ECF No. 24-14

15   (collectively, "post-November 15, 2019 discovery communications").  Although UPC did

16   not formally provide any formal responses to discovery after November 15, 2019, based

17   on the post-November 15, 2019 discovery communications Couture reasonably believed

18   that supplemental responses would be provided prior to receiving UPC's statement that

19   no further discovery requests would be produced in the December 20, 2019 letter.

20   Therefore, to the extent that the post-November 15, 2019 discovery communications do

21   not strictly comply with Local Civil Rule 37.01(A), the court excuses Couture's delay

22   and considers the motion on its merits.

1          **C.  Duplicative Discovery**

2          UPC argues that Couture's motion to compel for Questions #26 and #27 of the

3    RFP should be denied because those questions are unreasonably cumulative or

4    duplicative.  ECF No. 25 at 8.  Federal Rule 26(b)(2)(C) permits a court on motion to

5    limit discovery where "the discovery sought is unreasonably cumulative or duplicative or

6    can be obtained from some other source that is more convenient, less burdensome, or less

7    expensive."  UPC raises this objection for the first time in their response to this instant

8    motion, filed some five months after the deadline for objecting to Couture's discovery

9    requests had expired.  See Fed. R. Civ. P. 33(b)(2), (4) ("The responding party must serve

10   its answers and any objections within 30 days after being served with the interrogatories .

11   . . . Any ground not stated in a timely objection is waived unless the court, for good

12   cause, excuses the failure."); Fed. R. Civ .P. 34(b)(2)(A)-(B) ("The party to whom

13   the request [for production] is directed must respond in writing within 30 days after

14   beings served.... For each item or category, the response must either state that inspection

15   and related activities will be permitted as requested or state an objection to the request,

16   including the reasons.").  UPC has failed to provide the court with any evidence that

17   would demonstrate good cause.  Therefore, the court finds that UPC has waived any

18   objection that the discovery requests are unreasonably duplicative.

19         **D.  Production of Documents**

20         Couture seeks production of documents that are broken up into the categories:

21         (1) Document that are included in UPC's claims file related to Couture's claim

22               (Questions #5, 10, 26, and 27 of the RFP);

1      (2) UPC's policies, procedures, and guidelines related to Couture's claims

2          (Questions #6 and 17 of the RFP); and

3      (3) Documents which UPC has in its possession but has refused to produce

4          (Question #18 of the RFP).

5   ECF No. 24 at 5.  The court will begin by examining the documents requested for

6   production related to Questions #5, 10, 26, and 27 of the RFP, then proceed with

7   examining the documents requested for production related to Questions #6 and 17 of the

8   RFP, and conclude with examining the documents requested for production related to

9   Question #18 of the RFP.

10      **1.  UPC Amended Privileged List Documents**

11          Couture argues that UPC has failed to fully answer Questions #5, 10, 26, and 27

12   of the RFP by not providing the documents from UPC's amended privilege log.  ECF No.

13   24 at 5–6.  These documents are as follows: Internal Communications Regarding Denial,

14   dated April 5, 2019, from Derek Greiwe to Vladamir Chery ("document 1"); Field

15   adjuster Loss Report Regarding Subject Residence, dated March 22, 2019 ("document

16   2"); Photo report – Unredacted, dated March 22, 2019 ("document 3"[2]); Internal

17   Communications Regarding Subrogation, dated March 25, 2019 ("document 4"); Audit

18   Summary Report of Cabinets, dated March 22, 2019 ("document 5"); Claims Notes,

19   dated March 19, 2019 – July 5, 2019 ("document 6"); Risk Review regarding Pre-

20   Existing Damage (Email)(no date provided) ("document 7"); Worley Invoice Redaction,

21   dated March 22, 2019 ("document 8"); Photo Sheet Redaction, dated March 22, 2019

---

[2]  Both the defined term "document 3" and the defined term "unredacted photo report"
are the same document.

("document 9"); and Price List Variation Usage Report Redaction, dated March 22, 2019

("document 10") (collectively, "amended privileged list documents").  ECF No. 24-11.

Question #5 of the RFP instructs UPC to:

Produce all emails, letters, photographs, facsimiles, text messages, memorandum, opinion letters, reports, files, jpegs, images, screenshots, videos, invoices, receipts, payments, statements, and transcripts from Plaintiff's agents, employees, servants, or contractors related in any way whatsoever to the following: (a) Defendant's claim for benefits under the Policy; (b) real and personal property located at 1344 Winterberry Avenue, Goose Creek, South Carolina 29455; (c) Defendant Allen P. Couture: and the work, participation, review, adjustment, investigation, processing, and communications in any related to the claim.

ECF No. 24-7 at 3.

Question #10 of the RFP instructs UPC to:

Produce any and all reports, studies, analyses, emails, invoices, comments, memoranda, letters, texts, or other documentation of any employee, adjuster, engineer, fire marshal, police officer, fireman, expert, consultant, or independent contractor that are related in any way whatsoever to the claim.

Id. at 4.

Question #26 of the RFP instructs UPC to:

Produce the entire claim file, including all communications, emails, memoranda, reports, or electronic or written materials included in the claim file.

Id. at 6.

Question #27 of the RFP instructs UPC to:

Produce all un-redacted minutes of meetings of any group or committee of Plaintiff regarding this claim or Policy, agenda, memoranda, internal correspondence, e-mails, intranet documents and/or directives related to the subject claim.

Id.  The court will begin its analysis by examining UPC's objections on the grounds of

attorney-client privilege.  Then the court will analyze UPC's objections on the grounds of

1    the work-product doctrine, and finally the court will review UPC's objections on the

2    grounds of proprietary information privilege.

3                            **a. Attorney-Client Privilege**

4          Couture argues that document 1 is not subject to the attorney-client privilege, and

5    if it is subject to the attorney-client privilege, then to the extent that the legal advice

6    provided in this e-mail served as a basis for UPC's contention that its actions were

7    proper, the attorney-client privilege has been waived and document 1 must be produced.

8    ECF No. 24 at 10–11.  Couture's basis for waiver of attorney-client privilege is grounded

9    in UPC's affirmative defense that it "at all times acted reasonably and in good faith in the

10   exercise of its legal rights" and the South Carolina Supreme Court's holding in In re Mt.

11   Hawley Ins. Co., 829 S.E.2d 707 (S.C. 2019).  Id. at 11; ECF No. 16 at 11.  UPC

12   acknowledges that document 1 is not subject to the attorney-client privilege, withdraws

13   its objection on that basis stating that it was made as "an inadvertent error", and argues

14   instead that document 1 is still privileged under work-product doctrine as also stated on

15   the amended privilege log.  ECF No. 25 at 11.  Therefore, the court need not address

16   whether UPC waived its attorney-client privilege as to document 1.  The court instead

17   turns its attention to UPC's arguments of protected privilege under the work-product

18   doctrine.

19                         **b. Mental Impressions/Work Product**

20         Couture argues that UPC has failed to meet its burden that documents 1–7 and 9

21   of the amended privileged list documents are protected by the work-product privilege.

22   ECF No. 24 at 8.  UPC contends that it provided all the documents that were generated as

23   a matter of course in an investigation, and withheld documents 1–7 and 9 of the amended

1    privileged list documents because those documents were "dedicated to memorializing the

2    mental impressions of the adjusters for anticipated future [litigation]" or "[a]t a

3    minimum, 'ordinary work product.'"  ECF No. 25 at 9–10.

4            The work-product doctrine protects from discovery "documents and tangible

5    things that are prepared in anticipation of litigation or for trial by or for another party or

6    its representative (including the other party's attorney, consultant, surety, indemnitor,

7    insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  For a document to be created "in

8    anticipation of litigation" it must be "prepared because of the prospect of litigation when

9    the preparer faces an actual claim following an actual event or series of events that

10   reasonably could result in litigation."  Nix, 2015 WL 631155 at *3 (quoting National

11   Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)).  The

12   proponent of work product protection must establish that the "driving force behind the

13   preparation of each requested document" is the prospect of litigation.  National Union

14   Fire Ins. Co., 967 F.2d at 984.  To qualify as work-product shielded from discovery, the

15   evidence must be: (1) documents or tangible things otherwise discoverable; (2) prepared

16   in anticipation of litigation or for trial; and (3) by or for a party to the lawsuit or by or for

17   the party's representative.  Id.; see, e.g., Collins v. Mullins, 170 F.R.D. 132, 134

18   (W.D.Va.1996); Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos., 123 F.R.D. 198,

19   201 (M.D.N.C.1988) (citation omitted).

20           The work-product doctrine encompasses both "fact" work-product and "opinion"

21   work-product.  Fact work-product consists of "documents prepared by an attorney that do

22   not contain the attorney's mental impressions." Nix, 2015 WL 631155 at *4 (citing In re

23   Grand Jury Proceedings, Thursday, Special Grand Jury Session Sept. Term, 1991, 33

1    F.3d 342, 348 (4th Cir.1994)).  It can be discovered upon "a showing of both a substantial

2    need and an inability to secure the substantial equivalent of the materials by alternate

3    means without undue hardship."  Id.  Opinion work-product contains the fruit of the

4    attorney's mental processes and, thus, is more scrupulously protected.  Id.  Opinion work-

5    product "can become discoverable if the privilege has been waived by the holder."  Id.;

6    see also In re Doe, 662 F.2d 1073, 1081 (4th Cir. 1981) ("[W]hen an attorney freely and

7    voluntarily discloses the contents of otherwise protected work-product to someone with

8    interests adverse to his or those of the client, knowingly increasing the possibility that an

9    opponent will obtain and use the material, he may be deemed to have waived work-

10   product protection.").

11           "The application of the work product doctrine is particularly difficult in the

12   context of insurance claims."  Gilliard v. Great Lakes Reinsurance (U.K.) PLC, 2013 WL

13   1729509, at *2 (D.S.C. Apr. 22, 2013) (quoting Kidwiler v. Progressive Paloverde Ins.

14   Co., 192 F.R.D. 536, 541–42 (N.D.W.Va.2000)).  "[I]nsurance companies have a duty to

15   investigate, evaluate, and adjust claims made by their insureds.  The creation of

16   documents during this process is part of the ordinary course of business of insurance

17   companies, and the fact that litigation is pending or may eventually ensue does not cloak

18   such documents with work-product protection."  Id. (quoting HSS Enters., LLC v. Amco

19   Ins. Co., 2008 WL 163669, at *4 (W.D. Wash. Jan.14, 2008) (citation omitted).

20   "Because an insurance company has a duty in the ordinary course of business to

21   investigate and evaluate claims made by its insureds, the claims files containing such

22   documents usually cannot be entitled to work product protection."  Id. (quoting Pete

23   Rinaldi's Fast Foods, 123 F.R.D. at 202; see also St. Paul Reinsurance Co. v.

1   Commercial Fin. Corp., 197 F.R.D. 620, 636 (N.D. Iowa 2000) ("[A]n insurer's

2   investigation of whether coverage exists is required and the conduct of that much of its

3   investigation is assuredly in the ordinary course of its business, not 'in anticipation of

4   litigation.'") (emphasis in original).

5        UPC acknowledges that the work product doctrine does not provide a protected

6   privilege "to those documents generated as part of a normal investigation such as

7   photographs, correspondence, estimates, audits, evidence obtained in the investigation

8   and correspondence with non-UPC witnesses." ECF No. 25 at 10–11.  At the hearing,

9   counsel for UPC argued that the anticipation of litigation began on March 22, 2019, when

10  Mr. Howell produced the unredacted photo report.  UPC relies on the holding in Rinaldi's

11  to support their contention that it acted in anticipation of litigation before it formally

12  denied the claim because the type of damage witnessed at the Residence, as documented

13  by the unredacted photo report, was such that litigation was likely.  ECF No. 25 at 10.

14       The Rinaldi's holding makes clear that, "if the insurer argues it acted in

15  anticipation of litigation before it formally denied the claim, it bears the burden of

16  persuasion by presenting specific evidentiary proof of objective facts demonstrating a

17  resolve to litigate." 123 F.R.D. at 203.  The court finds that UPC did not meet its burden

18  in this instance.  UPC did not provide any objective facts demonstrating a resolve to

19  litigate but instead only provided its subjective beliefs based on the type of damage

20  witnessed at the Residence.  As such, the court finds that, in accordance with Rinaldi's

21  holding, at the latest UPC may have acted in anticipation of litigation was on April 19,

22  2019, when counsel for Couture issued a letter to UPC disputing a material

23  misrepresentation and requesting additional information related to the denial of the claim

16

1    and the cancellation of the policy.  ECF No. 25-4.  However, UPC alternatively contends

2    that it acted in anticipation of litigation on April 4, 2019 when it issued the first letter of

3    denial of coverage.  ECF No. 25 at 11.

4          The court finds that all amended privileged list documents created prior to April

5    4, 2019 — the date of the first letter of denial of coverage — are clearly the result of the

6    ordinary course of business of insurance companies and not in anticipation of litigation,

7    and that all documents created after April 19, 2019 — when counsel for Couture issued a

8    letter to UPC disputing a material misrepresentation and requesting additional

9    information related to the denial of the claim and the cancellation of the policy — are

10   clearly work done in anticipation of litigation.  Without seeing the amended privileged

11   list documents created after April 4, 2019 but before April 19, 2019, the court is not in a

12   position to determine whether or not those documents are protected by the work-product

13   doctrine.  Therefore, the court grants the motion to compel as it relates to amended

14   privileged list documents created before April 4, 2019.  This includes documents 2–5[3],

15   documents 8–10, and portions of document 6 created before April 4, 2019.[4]  The court

---

[3]  In his reply to UPC's response to this motion, Couture informed the court that between
filing the motion and writing his response, he has received the unredacted photo report.
ECF No. 27 at 3.  Couture maintains that the unredacted photo report was provided by the
independent insurance agent who sold Couture the Policy and that UPC's argument of
work-product privilege should be waived as a result of UPC providing the unredacted
photo report to a third party.  ECF No. 27 at 3.  UPC strenuously disputes Couture's
version of how he came to obtain the unredacted photo report and denies waving any
privilege related to the unredacted photo report.  ECF No. 31 at 2–4.  The court need not
resolve the issue of how Couture came to be in possession of the unredacted photo report
or waiver because the court finds that unredacted photo report is not subject to work-
product privilege and orders UPC to provide it to Couture.

[4]  UPC also objected to the production of documents 8, 10, and portions of document 6
under the "proprietary information" privilege.  ECF No. 24 at 11.  As the court will
explain in greater detail below, UPC fails to meet its burden that documents 8, 10, and

17

1   orders UPC to deliver these documents to Couture no later than 14 days after the issuance

2   of this order.    The court denies the motion to compel as it related to amended privileged

3   list documents that were created after April 19, 2019.  The court withholds ruling as it

4   related to amended privileged list documents created between April 4, 2019 and April 19,

5   2019.  The court orders that UPC submit documents 1, 7, and the portions of document 6

6   that were written after April 4, 2019 but before April 19th to the court for <u>in camera</u>

7   review no later than 14 days after the issuance of this order.

8        The court will now examine UPC's objections to produce certain documents

9   under the proprietary information privilege.

10            **c.  Proprietary Information Privilege**

11       Couture contends that UPC has not provided any information related to the basis

12  for its claim of "proprietary information" protections, and therefore, the court should

13  grant the motion to compel documents 8, 10, and portions of document 6.  ECF No. 24 at

14  11.  UPC argues that those documents contain proprietary invoices based on internal

15  agreements for services and are in no way relevant to the present litigation.  ECF No. 25

16  at 10.

17       In seeking to prevent discovery based on a proprietary information claim, the

18  party resisting discovery must "demonstrate to the Court that the information being

19  sought is a trade secret and that its disclosure might be harmful."  <u>Mustang Innovation,</u>

20  <u>LLC v. Sonoco Prod. Co.</u>, 2015 WL 4508830, at *2 (D.S.C. July 24, 2015) (quoting <u>In re</u>

---

portions of document 6 were entitled to protection under the "proprietary information"
privilege.  Because documents 6, 8, and 10 are not entitled to proprietary information
privilege, UPC must produce documents 6, 8, and 10 created before April 4, 2019 as
ordered.

1    Sealed Air Corp., 220 F.R.D. 452, 453 (D.S.C.2004)).  "Once shown, the burden shifts to

2    the party that seeks the discovery to establish the relevance of the trade secret to the

3    lawsuit and that it is necessary to the action."  Id.  Finally, "if relevance and necessity are

4    established, the Court 'must balance the need for the information against the injury that

5    would ensue if disclosure is ordered.'"  Id. (internal citation omitted).

6        "There is no absolute privilege to protect trade secrets from disclosure during the

7    discovery process."  Id. (citing Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp.

8    1146, 1185 (D.S.C.1974)).  Discovery of confidential information, however, "is virtually

9    always ordered once the movant has established that the secret information is relevant

10   and necessary." Id. (internal citation and quotation marks omitted).  Under Rule

11   45(d)(3)(B)(i) and its counterpart Rule 26(c)(1)(g), confidential information "is more

12   than just routine business data; instead, it is important proprietary information that

13   provides the business entity with a financial or competitive advantage when it is kept

14   secret, and results in financial or competitive harm when it is released to the public."  Id.

15   at 2–3 (quoting Cobb v. Ramey Motors, Inc., 2014 WL 7159235, at *4 (S.D. W.Va.

16   Dec.15, 2014)).  Confidential commercial information has been defined as "information,

17   which if disclosed, would cause substantial economic harm to the competitive position of

18   the entity from whom the information was obtained."  Id. at 2–3 (quoting Massey Coal

19   Servs., Inc. v. Victaulic Co. of Am. 249 F.R.D. 477, 482 (S.D. W. Va. 2008).

20       At the hearing, counsel for UPC stated that while UPC considers its pricing

21   scheme proprietary, she could not provide any evidence of the economic harm that may

22   befall her client if she had to disclose documents 8, 10, and portions of document 6.  As a

23   result, the court finds that UPC failed to meet its burden to prevent discovery based on an

1     objection for proprietary information privilege.  Therefore, the court find that documents

2     8, 10, and the portions of document 6 are not entitled to be withheld on the basis of the

3     "proprietary information" privilege.  Therefore, the court orders UPC to deliver to these

4     documents within 14 days of this order.

5          **2.  UPC Policies, Procedures and Guidelines**

6          Couture argues that UPC should be required to produce documents related to

7     Questions #6 and #17 of the RFP because to the extent the procedures and steps for an

8     investigation related to water damage that should be undertaken by UPC were not taken,

9     that could be evidence of bad faith and/or negligence on the part of UPC.  ECF No. 24 at

10    12.  UPC contends that the Policy governed the decision made on Couture's claim, and

11    that the decision to deny the claim was based on the physical evidence from the

12    Residence, not a generalized policy.  ECF No. 25 at 6–7.  Because no generalized

13    decision-making guidelines or procedures were used in evaluating the claim and all

14    documents related to how the denial of claim have been produced, UPC objects to the

15    providing such generalized documents on the grounds that they are not relevant and such

16    a request is unduly burdensome.  Id. at 7.

17         Question #6 of the RFP instructs UPC to:

18         Produce complete and accurate copy of any and all policies, rules,
19         guidelines, directives, and standard operating procedures applicable to the
20         acceptance, denial, processing, adjustment, payment, or investigation of
21         the claim.
22
23    ECF No. 24-7 at 3.

24         Question #17 of the RFP instructs UPC to produce:

25         Copies of any claims handbook, training videos, computer modules,
26         employee handbook, standard operating procedure, policies, procedures
27         manual, or internal directives used by Plaintiff, its employees, agents

and/or servants, claims adjusters, claims team leaders, claims examiners, claims supervisors, claim professionals and claims managers for the processing, investigation, review and/or adjustment of claims in effect in 2018–2019.

Id. at 5.

The court finds that these requests are relevant to Couture's bad faith and breach of contract counterclaims and do not appear unduly burdensome.  "To be relevant, the discovery sought simply must be 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  Reeves v. Town of Cottageville, 2013 WL 12155000, at *4 (D.S.C. Oct. 11, 2013) (quoting Oppenhiemer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  Further, other courts have granted similar requests.  See Williamson v. Liberty Mut. Fire Ins. Co., 2015 WL 8489980, at *3 (S.D. W. Va. Dec. 9, 2015) (ordering defendant insurance company to produce to produce the claims manuals, policy manuals, policy statements, educational and training materials, or other documents regarding the processing of the claim at issue limited to the state where claim occurred and time period when claim occurred, finding them relevant to the bad faith claims and breach of contract claims).

In determining proportionality, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  If UPC failed to follow its prescribed procedures and policies related to Couture's claim on the Policy, it is likely that would support Couture's counterclaim of bad faith.  When considering the proportionality factors set forth in Fed. R. Civ. P. 26(b)(1), the court finds that the burden of producing

21

1    claims manuals and policy documents that were in effect at or near the time of Couture's

2    loss clearly does not outweigh their anticipated usefulness.

3        Because the documents requested in Questions #6 and #17 of the RFP clearly do

4    not outweigh their anticipated usefulness, the court grants Couture's motion to compel

5    for these questions and order that UPC produce any claims manuals, policy manuals,

6    policy statements, educational and training materials, or other documents regarding the

7    processing of a water damage claim in South Carolina in place during 2018–2019 no later

8    than 14 days after the issuance of this order.

9        **3.    Additional Relevant Documents**

10       Couture argues that UPC should be required to produce documentation related to

11   Question #18 of the RFP because confirmation of all payments received for the Policy

12   and for any policy ever issued by UPC to Couture is relevant to Couture's counterclaim

13   for breach of contract.  Couture argues that this information is relevant because in order

14   to receive coverage under the Policy, Couture was required to make payments to UPC.

15   ECF No. 24 at 12–13.  Couture contends that this information is relevant to prevent UPC

16   from raising as a defense to the breach of contract claim Couture's lack of payment

17   resulted in the termination of the Policy, and therefore UPC could not have breached a

18   contract that was no longer in effect.  UPC makes no objections to this request but

19   contends that Couture is already in possession of this documentation so there is no need

20   for UPC to duplicate production of these documents.  ECF No. 24-12 at 4.

21       Question #18 of the RFP instructs UPC to:

22       Documentation of all payments received for the Policy and for any policy
23       ever issued by [UPC] to [Couture].
24

1    ECF No. 24-7 at 5.  The court finds that this request is relevant to the Couture's breach of

2    contract claim and not unduly burdensome to UPC.  Therefore, the court grants Couture's

3    motion to compel documents related to Question #18 of the RFP.[5]  The court orders UPC

4    to deliver to the documents related to Question #18 of the RFP no later than 14 days after

5    the issuance of this order.

6        **E.  Motion for Protective Order**

7        As a final matter, the court will examine UPC's motion for protective order.  On

8    February 3, 2020, Couture served UPC with a second set of Requests to Admit.  ECF No.

9    33-1.  As part of the second set of Requests to Admit, Couture asks UPC to admit that the

10    unredacted photo report in Couture's possession was genuine.  Id.  In response, UPC filed

11    its motion for protective order.  ECF No. 33.  UPC argues that the court should

12    temporarily grant its motion for protective until the court rules on Couture's motion to

13    compel.  ECF No. 33 at 3–4.  Having ruled that the unredacted photo report was not

14    subject to the work-product privilege, the court denies UPC's motion for protective order.

15    The court orders UPC to respond to the second set of Requests to Admit no later than 14

16    days after the issuance of this order.

17

---

[5]  If UPC is willing to stipulate on the record that Couture was never in default of
payment for the Policy, then production of these documents is no longer necessary.

1                            **IV.   CONCLUSION**

2           For the reasons set forth above, the court grants in part, denies in part, and

3    withholds ruling in part until documents requested are submitted for an <u>in camera</u> review

4    by the court Couture's motion to compel, denies UPC's motion for protective order, and

5    finds as moot UPC's motion to quash.

6           **AND IT IS SO ORDERED.**
7
8
9



10                                            _____
11                                            **DAVID C.  NORTON**
12                                            **UNITED STATES DISTRICT JUDGE**
13
14
15
16   **May 11, 2020**
17   **Charleston, South Carolina**
18

24