# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED PROPERTY & CASUALTY INSURANCE, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:19-cv-01856-DCN |
| vs. | ) ) ) | **ORDER** |
| ALLEN P. COUTURE, | ) ) | |
| Defendant. | ) ) ) | |

The following matter is before the court on plaintiff Allen P. Couture's ("Couture") motion to compel, ECF No. 66. For the reasons set forth below, the court grants in part and denies in part the motion.

## I.  BACKGROUND

This insurance dispute arises out of a homeowner's insurance policy (the "Policy") between an insurer, defendant United Property & Casualty Insurance ("UPC"), and its former insured, Couture, covering Couture's primary residence located at 1344 Winterberry Avenue, Goose Creek, South Carolina (the "Residence"). Prior to purchasing the Residence, Couture had an inspection performed that unearthed several issues, including damage to the subflooring in multiple locations and faulty shut-off valves that caused the plumbing underneath the laundry room and kitchen to leak. ECF No. 5-1. After the seller of the Residence purported to fix those issues, Couture had a second inspection performed. The second inspection found all repairs to the "Plumbing System" to be "satisfactory"; however, it also noted that certain repairs to the subflooring "do NOT appear to be adequate" because the subflooring remained "deteriorated." ECF

1

No. 5-2 (emphasis in original).  On October 5, 2018, Couture filed an application for a homeowner's insurance policy with UPC.  ECF No. 25-2.  The application included a question asking if the Residence had any "unrepaired or existing damage," to which Couture responded, "No."  Id. at 4.  UPC granted the application and issued the Policy to Couture with the policy period beginning on October 15, 2018 and continuing through October 15, 2019.  ECF No. 1-1.

According to the complaint, on March 17, 2019, Couture became aware of a leak in the laundry room's water supply line that caused significant water damage to the subflooring and walls of the laundry room as well as to the kitchen cabinets.  As a result, Couture filed a claim under the Policy.  On March 22, 2019, UPC sent a third-party field adjuster, Mike Howell ("Howell"), to perform a physical inspection of the Residence.  After receiving the inspection report from Howell, UPC denied Couture's claim by letter dated April 4, 2019, reasoning that the claimed damages "appear as a result of long-term water and mold damage prior to your policy inception date, and are considered pre-existing damages prior to the policy term."  ECF No. 24-1 at 2.  On April 9, 2019, UPC sent Couture a second letter cancelling the Policy due to a material misrepresentation of fact, based on Couture's answer on the Policy application that the Residence was free of "unrepaired or existing damage."  ECF No. 24-2.

On June 28, 2019, UPC filed this declaratory judgment action, asking the court to declare that Couture is not entitled to coverage under the Policy for claimed damages to the Residence.  ECF No. 1, Compl.  On August 8, 2019, Couture answered the complaint and asserted counterclaims for breach of contract, bad faith, and negligence.  ECF No. 5.  Following various discovery squabbles that necessitated court intervention, Couture

served a second set of requests for production on UPC on October 15, 2020. ECF No. 66-1. On November 13, 2020, UPC responded to that set of requests. ECF No. 66-2. Because Couture believed UPC's responses to be inadequate, counsel for Couture sent counsel for UPC a letter explaining the response's perceived shortcomings. The parties continued to exchange correspondence until UPC supplemented its initial responses on January 4, 2021. Couture communicated his dissatisfaction with the supplemental responses to UPC. Despite trading several more emails, the parties were unable to resolve the dispute. As a result, Couture filed the instant motion to compel on January 19, 2021. ECF No. 66. On February 2, 2021, UPC responded to the motion. ECF No. 70. Couture did not file a reply, and the time to do so has now expired. The court held a hearing on the motion on February 17, 2021. The motion is now ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n. 16 (4th Cir. 1995) (citing Erdmann v. Preferred

3

Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Service, 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

## III.   DISCUSSION

In his motion, Couture asks the court to compel UPC's response to three requests for production.[1] UPC objects to each on individualized grounds. The court addresses each in turn.[2]

---

[1] Couture's motion initially sought compliance with four requests for production, but, at the hearing on the motion, the parties resolved the dispute with respect to Couture's Request for Production No. 4.

[2] UPC contends as a general matter that the motion to compel is untimely but ultimately notes that despite the untimeliness of the motion, it "welcomes the [c]ourt's guidance on these issues so that . . . discovery can be completed to move the case forward." ECF No. 70 at 11. Even if the court were to construe this argument as a potential ground for denial, the court would reject it. To be sure, the local civil rules require that "motions to compel [ ] be filed within twenty-one [ ] days after receipt of the discovery response to which the motion to compel is directed . . . ." Local Civ. Rule 37.01(a). But the very next sentence of the rule states, "If counsel are actively engaged in attempts to resolve the discovery dispute, they may agree to extend the time to comply with the discovery request . . . ." Id. That's just what happened here, as the parties agreed that UPC could supplement its responses despite the passage of the deadline to do so. In any event, the court would hesitate before punishing a party whose motion to

### A. Request for Production No. 1

Couture's first request for production seeks from UPC: "Copies of all correspondence, emails and/or text messages between [UPC] and/or [UPC]'s counsel and Michael Howell related in any way to this litigation, the Residence or the Policy." ECF No. 66-2 at 2. Couture states in his motion that at some point after serving the request, he "agreed to narrow" it to

> (1) those text messages exchanged between counsel for [UPC] and Michael Howell on or after March 18, 2019 and (2) a copy of the email with attachments from Howell to counsel for [UPC], dated 10.07.20, by which it appears Howell sent a copy of certain text messages to counsel for [UPC]. ([UPC] produced the email, but not the attachment.)

ECF No. 66 at 3 (parenthetical aside in original). UPC responded with a boilerplate objection that the request was "overly broad," "not related to a claim or defense," and "disproportional to the needs of the case." ECF No. 66-2 at 2. In an email to Couture, UPC also noted that it was "no longer" in possession of the requested "text messages exchanged with [ ] Howell." ECF No. 66-10.

At the hearing on the motion, counsel for UPC explained that Couture has obtained the full extent of the text message conversation between her and Howell through his subpoena of Howell, and she reiterated that she is no longer in possession of any text messages between herself and Howell. Further, counsel noted that Howell testified at his deposition that the text conversation did not include any substantive discussion of Couture's claim, but instead concerned logistical details related to the scheduling of Howell's deposition. The court cannot compel a party to produce that which it does not

---

compel is delayed by good-faith attempts to resolve the dispute without court intervention.

have.  However, the law is clear that even where a respondent is not in possession of responsive documents, "the requesting party is entitled to a response" by the respondent stating that a reasonable search produced no responsive documents.  Reid v. Hasty, 2009 WL 10711916, at *7 (N.D. Ga. Jan. 30, 2009), report and recommendation adopted, 2009 WL 10711953 (N.D. Ga. Mar. 2, 2009).  Objections on unrelated bases are not a substitute for a statement that certain documents are not within the responding party's possession or control.  As such, the court compels UPC to respond to Couture's first request for production.  If UPC is not in possession of the requested materials, it must so state in a signed response, such that its counsel is subject to the duties imposed by Fed. R. Civ. P. 11.[3]

### B.  Request for Production No. 5

Vladimir Chery ("Chery") is a former "desk adjuster" for UPC who handled the investigation of Couture's claim.  In a deposition, Chery explained that he was able to draw certain conclusions regarding the damage to the Residence based on training he had received related to water damage.  Couture's fifth request for production seeks a "[c]opy of [UPC]'s employment file for Vladimir Chery."  ECF No. 66-2 at 2.  After UPC's initial objection to this request, Couture agreed to narrow it to: "any document which references training received by Mr. Chery by or through his employment with UPC which relates in any way to water damage."  ECF No. 66 at 5.  In response, UPC contends:

---

[3] At the hearing, counsel for Couture requested that UPC stipulate that it is not in possession of any text messages responsive to the request.  But the law does not require a stipulation here.  Instead, the rules require a signed writing, which brings the statements therein within the confines of Fed. R. Civ. P. 11.

6

> UPC has informed [Couture] on two [ ] separate occasions that UPC does not maintain training records for its employees. Licensed adjusters are required to maintain certain continuing education requirements to keep their licenses current[;] UPC does not perform this training. UPC is not in possession of any responsive documents and, once again, UPC cannot produce documents it does not have.

ECF No. 70 at 13.

Again, UPC cannot produce records that it does not have, but, nevertheless, Couture is entitled to a signed response from UPC stating as much. Therefore, the court also compels UPC's response to Couture's fifth request for production, whether that response be responsive documents or a statement disclaiming possession of such documents after conducting a reasonable search for the same.

### C. Request for Production No. 6

Couture's sixth request for production seeks: "Copy of any document(s) maintained by [UPC] which reference the reason for Vladimir Chery's termination from employment with [UPC], his contact information or last known address." ECF No. 66-2 at 3. UPC explains that evidence of Chery's "termination" is not relevant because Chery was not terminated by UPC but instead resigned amicably from UPC a year after UPC denied Couture's claim. The parties spat over whether the word "termination" includes an employee's voluntary resignation; however, the court need to resolve that issue because it determines that documents related to the "termination" of Chery's employment would not be relevant to Couture's lawsuit. As UPC explains, Chery was not terminated for any reason related to Couture's claim or to the cancellation of the Policy. Indeed, Chery has testified that he left the company on good terms to pursue a different employment opportunity. Therefore, Chery's "termination"—however construed—is not

relevant here. As such, the court denies the motion to compel with respect to Couture's sixth request for production.

## IV. CONCLUSION

For the foregoing reasons the court **GRANTS IN PART AND DENIES IN PART** the motion to compel in accordance with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 18, 2021
Charleston, South Carolina**

8