# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| UNITED PROPERTY & CASUALTY INSURANCE, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 2:19-cv-01856-DCN<br>)<br>) **ORDER** |
| ALLEN P. COUTURE, | )<br>)<br>) |
| Defendant. | )<br>) |

This matter is before the court on plaintiff United Property & Casualty Insurance's ("UPC") motion for a protective order, ECF No. 79, and defendant Allen P. Couture's ("Couture") motion to compel, ECF No. 81. For the reasons set forth below, the court grants UPC's motion for a protective order and denies Couture's motion to compel.

## I.  BACKGROUND

This insurance dispute arises out of a homeowner's insurance policy (the "Policy") between an insurer, UPC, and its former insured, Couture, covering Couture's primary residence located at 1344 Winterberry Avenue, Goose Creek, South Carolina (the "Residence"). Prior to purchasing the Residence, Couture had an inspection performed that unearthed several issues, including damage to the subflooring in multiple locations and faulty shut-off valves that caused the plumbing underneath the laundry room and kitchen to leak. ECF No. 5-1. After the seller of the Residence purported to fix those issues, Couture had a second inspection performed. The second inspection found all repairs to the "Plumbing System" to be "satisfactory"; however, it also noted

1

that certain repairs to the subflooring "d[id] NOT appear to be adequate" because the subflooring remained "deteriorated." ECF No. 5-2 (emphasis in original). On October 5, 2018, Couture filed an application for a homeowner's insurance policy with UPC. ECF No. 25-2. The application included a question asking if the Residence had any "unrepaired or existing damage," to which Couture responded, "No." Id. at 4. UPC granted the application and issued the Policy to Couture with the policy period beginning on October 15, 2018 and continuing through October 15, 2019. ECF No. 1-1.

According to the complaint, on March 17, 2019, Couture became aware of a leak in the laundry room's water supply line that caused significant water damage to the subflooring and walls of the laundry room as well as to the kitchen cabinets. As a result, Couture filed a claim under the Policy. On March 22, 2019, UPC sent Mike Howell ("Howell")—a third-party field adjuster at the independent adjusting firm Worley Claims Services ("Worley"), now known as Alacrity Claims—to perform a physical inspection of the Residence. After receiving the inspection report from Howell, UPC denied Couture's claim by letter dated April 4, 2019, reasoning that the claimed damages "appear as a result of long-term water and mold damage prior to your policy inception date, and are considered pre-existing damages prior to the policy term." ECF No. 24-1 at 2. On April 9, 2019, UPC sent Couture a second letter cancelling the Policy due to a material misrepresentation of fact, based on Couture's answer on the Policy application that the Residence was free of "unrepaired or existing damage." ECF No. 24-2.

On June 28, 2019, UPC filed this declaratory judgment action, asking the court to declare that Couture is not entitled to coverage under the Policy for claimed damages to the Residence. ECF No. 1, Compl. On August 8, 2019, Couture answered the complaint

and asserted counterclaims for breach of contract, bad faith, and negligence. ECF No. 5. In the latest installment in a long line of various discovery squabbles that have necessitated court intervention, Couture served a Federal Rule of Civil Procedure 30(b)(6) notice of deposition on UPC on March 6, 2020. The parties exchanged several communications regarding UPC's objections to the deposition topics but were forced to postpone the 30(b)(6) deposition due to the COVID-19 pandemic. On June 15, 2021, Couture served a fifth amended 30(b)(6) notice of deposition on UPC. ECF No. 80-2. On June 23, 2021, UPC sent a letter objecting to the topics in the deposition, but the letter repeated many of the same objections UPC had previously raised, which Couture claimed to have already been resolved in the fifth amended notice of deposition. Because Couture believed UPC's objections were duplicative, he chose not to respond. On July 26, 2021—the night before the deposition—UPC sent another letter objecting to the topics set forth in the fifth amended notice of deposition. The 30(b)(6) deposition of UPC's corporate representative, Jeff Lacombe ("Lacombe"), took place as scheduled on July 27, 2021. Based on the amended topics, UPC was satisfied that some of its prior objections had been resolved, see ECF No. 79-1 at 3, but refused to allow its representative to answer questions on at least three deposition topics. UPC indicated during the deposition that it intended to file a motion for protective order for any further discovery related to those three topics. After the deposition, UPC supplemented Lacombe's answers with a "partial reformed response" in the form of Lacombe's affidavit (the "amended response") on August 2, 2021, in which it claimed to provide "all of the information that it can reasonably obtain through a corporate records search related to these line items." ECF No. 79-1 at 4 (citing ECF No. 79-5, Lacombe Aff.).

UPC filed its motion for a protective order on August 2, 2021. Couture responded to the motion on August 16, 2021. ECF No. 80. UPC did not file a reply, and the time to do so has now expired. On August 17, 2021, Couture filed his motion to compel. ECF No. 81. UPC responded on August 31, 2021, ECF No. 82, and Couture replied on September 7, 2021, ECF No. 84. The court held a telephonic hearing on both motions on October 19, 2021. ECF No. 88. As such, all motions have been fully briefed and are now ripe for review.

## II.   STANDARD

### A.  Motion to Compel

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Rather, information is relevant and discoverable if it relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S.

ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

**B. Motion for Protective Order**

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of discovery. Fed. R. Civ. P. 26(c)(1). "The party moving for a protective order bears the burden of establishing good cause." Webb v. Green Tree Servicing LLC, 283 F.R.D. 276, 278 (D. Md. 2012). "Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production." UAI Tech., Inc. v. Valutech, Inc., 122 F.R.D. 188, 191 (M.D.N.C. 1988). In other words, "the Court must weigh the need for the information versus the harm in producing it." A Helping Hand, LLC v. Baltimore Cnty., 295 F. Supp. 2d 585, 592 (D. Md. 2003) (internal quotation marks omitted). "The standard for issuance of a protective order is high." Nix v. Holbrook, 2015 WL 631155, at *2 (D.S.C. Feb. 13, 2015) (citing

Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 125 (D. Md. 2009)). However, courts are afforded broad discretion "to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

### III.   DISCUSSION

In its motion, UPC seeks a protective order precluding additional discovery related to topic numbers 25, 26, and 32 in the fifth amended 30(b)(6) notice of deposition. Couture argues that such a protective order would be inappropriate. Moreover, in connection with his motion to compel, Couture contends that UPC further failed to adequately prepare its 30(b)(6) witness on the following other topic numbers: 3, 4, 6, 7, 9, and 28. The court first addresses UPC's motion for protective order and then addresses Couture's request to compel testimony on the additional topics.

**A.  Motion for a Protective Order**

**1.  Topic No. 25**

UPC first argues that it should not be required to provide discovery on Topic No. 25, which asks UPC, or its representative, for "[t]he number of insurance policies issued in South Carolina by Plaintiff, the number of claims made, and the number of claims denied, from 2017 to present." ECF No. 80-2 at 6. UPC's amended response supplemented Lacombe's answers on this topic by stating:

> UPC does not maintain this information as stated and the lack of specificity of this line item renders the information impossible to accurately compile. The numbers responsive to this line item change every day. Additionally, there is no way to be able to tell whether these policies are similar to that of the Defendant. I can attest that UPC issued 28,792 New Business Policies from 1/1/17 to 6/1/21 and 11,930 claims were filed during that time frame in South Carolina. I cannot tell how many of those claims were denied as requested by Defendant unless I individually review each of the 11,930

6

> claims. This review would take a tremendous amount of man hours as I do not have the ability to electronically search whether claims were denied, especially as it relates to the claims that were processed in the older claims systems.

Lacombe Aff. ¶ 6(a).

Couture does not offer any specific reason why this amended response is inadequate in his response to the motion for a protective order. Instead, in his response to the motion for a protective order, Couture contends that if UPC "was truly unable to prepare for the topics for which it now seeks protection, it was required to seek this protective order prior to the deposition." ECF No. 80 at 3. Couture further claims that UPC failed to notify Couture that it intended to file for a protective order until the deposition had begun and did not seek a protective order until after the deposition. As a result, Couture seeks sanctions "in the form of the reasonable expenses and attorneys [sic] fees incurred in preparing for and taking the deposition, and that Plaintiff be required to attend an additional deposition." Id. at 4.

The court first addresses Couture's request for sanctions, which the court also construes as an argument that a protective order is not warranted. Couture states that "[t]he proper procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the opposing party, but to move for a protective order." Id. (citing Beach Mart, Inc. v. L&L Wings, Inc., 302 F.R.D. 396, 406 (E.D.N.C. 2014)). "The corporation cannot make its objections and then provide a witness that will testify only within the scope of its objections." Beach Mart, 302 F.R.D. at 406 (citing Robinson v. Quicken Loans, Inc., 2013 WL 1776100, at *3 (S.D. W. Va. Apr. 25, 2013)).

The court agrees with Couture that UPC should have moved for a protective order prior to the 30(b)(6) deposition. However, "[i]t is well-settled that discovery rules are to

7

be given a broad and liberal treatment." Palmer v. Standard Fire Ins. Co., 2016 WL 7839135, at *2 (D.S.C. Apr. 12, 2016) (citing Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., 967 F.2d 980, 983 (4th Cir. 1992)). Courts in the District of South Carolina have previously considered motions for protective orders even when requested after depositions, based on objections made during those depositions. See, e.g., Clemson Univ. v. Inter-Indus. Conf. on Auto Collision Repair, 2005 WL 8162872, at *4–5 (D.S.C. Apr. 20, 2005) (considering and granting a plaintiff's motion for a protective order after one of the 30(b)(6) witnesses asserted work product privilege during the deposition); accord Hous. Specialty Ins. Co. v. Vaughn, 2016 WL 11620047, at *4 (M.D. Fla. Aug. 8, 2016) (considering but denying protective order on deposition areas of inquiry). The court finds that UPC's failure to move for a protective order before the hearing does not warrant either automatic denial of its motion or sanctions. The record indicates that UPC attempted to seek a mutually agreeable resolution on the contested deposition topics via a letter dated June 23, 2021. Couture did not respond. Even if UPC's objections were identical to those which it raised previously, Couture was on notice that UPC continued to dispute certain deposition topics. Therefore, the court will not automatically dismiss UPC's motion for protective order and turns to the substance of UPC's request.

In short, UPC argues that outside of the supplemental information provided in its amended response to the deposition notice, the "information cannot be obtained absent the dedication of tremendous amounts of manhours and resources to evaluate tens of thousands of policies." ECF No. 79-1 at 4. Again, Couture does not rebut this claim directly, and the court finds that UPC has provided a satisfactory answer to Topic No. 25.

UPC's amended response states that "UPC issued 28,792 New Business Policies from 1/1/17 to 6/1/21 and 11,930 claims were filed during that time frame in South Carolina." ECF No. 79-5 at 1.  This is responsive to Couture's inquiry into "[t]he number of insurance policies issued in South Carolina by Plaintiff[ and] the number of claims made . . . from 2017 to present."  ECF No. 80-2 at 6.  To the extent that Couture complains this response did not come during the 30(b)(6) deposition, the court finds that the prejudice is minimal because the statement is attributable to UPC's designee, Lacombe.  Regarding the request for "the number of claims denied" during that period, the court finds that Lacombe's response—that reviewing for this information "would take a tremendous amount of man hours"—reasonably indicates that the burden of expense outweighs the likely benefit, which appears to be minimal.  Topic No. 25 is not limited to a particular type of policy issued by UPC, and there is scant evidence that information about the percentage of denials among all UPC's claims is relevant to the issues presented in Couture's denial.  As such, the court grants UPC's request for a protective order against propounding further discovery on Topic No. 25.

### 2. Topic No. 26

Topic No. 26 notices deposition questioning on "[t]he number of claims investigated by Worley Claims Services from 2018 to present on behalf of Plaintiff in South Carolina, and the number of those claims denied by Plaintiff."  ECF No. 80-2 at 6.  The amended response states:

> UPC does not maintain this information as stated. Worley Claims Services, now known as Alacrity Claims, does not "investigate" UPC's claims. So, technically the answer to this question is "zero".  Even giving Defendant the benefit of the doubt that the more accurate question is whether Worley is/was "involved" as a vendor in a particular claim.  I have no way of

> confirming how many of those claims were denied.  I would have to review the 11,909 claims identified in Paragraph (6.)(a.) above.

Lacombe Aff. ¶ 6(b).  In its response, Couture rests on its contention that UPC should have sought a protective order before the deposition.  Since the court has already addressed this argument, it moves on to the substance of the amended response.

At the hearing, Couture raised the argument that the amended response to Topic No. 26 is still unavailing.  He stated that the percentage of claims denied by UPC when Worley is used as a vendor is relevant to Couture's claim that UPC improperly denied his claim based on Worley's findings.  He further argued that UPC should have documentation of each time it used Worley as a partner, such that it would appear to be a poor way of doing business if UPC had to look through all 11,909 claims to identify those cases, as Lacombe protests.

Following the hearing, counsel for UPC notified the court and Couture's counsel that based on its accounting records, it was able to identify that Worley handled 1,734 claims for UPC.  However, UPC reiterated that it still could not tell, absent a manual review, how many of those claims had been denied by UPC.

First, in terms of the amended response, UPC may claim that Worley does not "investigate" claims, but the designation appears to be semantic.  The undisputed evidence indicates that Worley is "an independent adjusting firm" that, in at least one case (Couture's), "observed Water and mold damage."  ECF No. 24-1 at 3.  UPC treated these findings as "facts of our investigation," which it then used to determine that there were "pre-existing damages prior to the policy term."  Id.  The court does not find Couture's use of the term "investigated" to be confusing.  Ultimately, however, the court finds that the amended response—in tandem with the additional information provided by

10

UPC's counsel after the hearing—is sufficient. UPC provided the number of claims in which it used Worley but argued that providing the number of denials would be overly burdensome. The party seeking to avoid discovery "must demonstrate how the request is burdensome by submitting affidavits or other evidence revealing the nature of the burden," Douty v. Rubenstein, 2015 WL 4163093 (S.D. W. Va. July 9, 2015), and UPC represented at the hearing that it would take twenty-four weeks of work for Lacombe to review all of the insurance claims. While Couture claims it seems commercially reasonable for the number of denials to be easily accessible in UPC's system, the court finds reasonable UPC's statement that it was able to identify the number of claims involving Worley after working with its vendor manager but was unable to find out the number of denials. Furthermore, the court finds that the need for the information sought is relatively minimal. By Couture's own admission, neither Worley nor its investigators are decisionmakers with regard to UPC's denial of coverage. The claims which involve Worley certainly extend beyond water damage claims. As such, the court finds that the need for the discovery is outweighed by the burden that UPC maintains this would require, and the court grants a protective order on further discovery on this narrow topic.

### 3. Topic No. 32

Finally, Topic No. 32 noticed potential deposition questioning regarding:

> The parties, jurisdiction, docket number, county and state, and resolution for each legal action brought against Plaintiff in South Carolina in the last five (5) years alleging negligence, unfair claims practices, bad faith or misconduct in the context of an insurance claim and whether or not testimony under oath was given by Plaintiff.

ECF No. 80-2 at 6. UPC's amended response from Lacombe states:

> UPC does not maintain this information as stated. I have no way to dependably search corporate records to render reliable data on this topic. The only way to compile this information is to search each and every county

11

> record in South Carolina and read each Complaint to determine the causes of action asserted. This information, available on public record, is just as available to the Defendant and is, unquestionably, burdensome to compile.

Lacombe Aff. ¶ 6(c). First, as discussed, the court has no reason to doubt the veracity of UPC and Lacombe's testimony regarding UPC's document retention practices. Moreover, the court finds that this information is not necessarily subject to discovery under a 30(b)(6) deposition. "'Even under the present-day liberal discovery rules, [the responding party] is not required to have counsel marshal all of its factual proof and prepare a witness to be able to testify on a given defense or counterclaim,' especially 'where the information appears to be discoverable by other means.'" Proa v. NRT Mid-Atl., Inc., 2008 WL 11363286, at *14 (D. Md. June 20, 2008) (quoting In re Indep, Serv. Orgs. Antitrust Litig., 168 F.R.D. 652, 654 (D. Kan. 1996)). If the responding party has "demonstrated the burden such discovery will have on them" and that the requesting party "can obtain the factual support . . . in other less burdensome ways," then a court may instead require the responding party to provide the information through other means. See id. Similarly, here, the court fails to see why the requested information is not readily discernable by means other than a 30(b)(6) deposition. While Lacombe is a litigation specialist at UPC, Lacombe Aff. ¶ 2, there is no indication he is better suited than Couture to gather the information. Therefore, the court grants UPC's motion for a protective order as to this topic.

### B. Motion to Compel

Couture argues for the first time in his reply in support of his motion to compel that UPC failed to properly prepare its witness on topics 3, 4, 6, 7, 9, and 28, and he should be allowed to reconvene the deposition for those topics. Couture claims he was forced to delay the argument for his motion to compel because at the time he filed it, the

"[p]arties ha[d] not yet received the transcript of the deposition, and as such, Defendant will timely supplement this motion with examples of Plaintiff's failure to adequately and sufficiently answer deposition questions." ECF No. 81 at 2. Couture also claims that "Plaintiff was unwilling to allow for an extension until such time as the deposition transcript could be reviewed by Defendant." Id. Nevertheless, UPC presented various responses to the motion to compel at the hearing. The court finds that there is sufficient information to deny Couture's requests under each of the topics. Couture's reply groups related topics together, and, for ease of discussion, the court does so as well.

### 1. Topic Nos. 6, 7, and 9

The following topics are set forth in Couture's fifth amended notice of deposition:

6. Basis for all decision-making regarding Defendant Couture's claim.

7. Investigation of Defendant Couture's claim, all work performed by or on behalf of Plaintiff to investigate the claim, and all correspondence related to investigation of the claim.

9. All evidence, analysis and other information relied upon to determine Plaintiff's response to Defendant Couture's claim.

ECF No. 80-2 at 5. Couture states that based on these topics, Couture showed Lacombe—UPC's corporate designee—the photo sheet and report prepared by Howell— the field investigator. Couture complains that in response, Lacombe stated he was not a damages expert and refused to answer questions related to whether damages were shown in the photographs. ECF No. 84 at 4–6. Couture argues that UPC failed to prepare its witness to answer questions on damages, and UPC should not be allowed to use the fact that Lacombe is not a damages expert as an excuse because it did not previously use an outside expert to make its determination on preexisting damages.

13

The court finds these arguments unconvincing. To be sure, Rule 30(b)(6) "imposes a 'duty to prepare the designee that goes beyond matters personally known to the designee or to matters in which the designee was personally involved.'" Wilson v. Lakner, 228 F.R.D. 524, 528 (D. Md. 2005) (quoting Poole v. Textron, Inc., 192 F.R.D. 494, 504 (D. Md. 2000)) (cleaned up). However, "[a]bsolute perfection is not required of a 30(b)(6) witness." Atanassova v. Gen. Motors LLC, 2021 WL 1946520, at *3 (D.S.C. Mar. 12, 2021); see QBE Ins. Corp. v. Jorda Enters., Inc., 277 F.R.D. 676, 691 (S.D. Fla. 2012) (noting that the "mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation"). The corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the requesting party] and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed . . . as to the relevant subject matters." Mitsui & Co. v. P.R. Water Res. Auth., 93 F.R.D. 62, 67 (D.P.R. 1981).

Here, topic numbers 6, 7, and 9 focused on UPC's determination that there was preexisting damage. It was fair for Lacombe to state that he could not make an original determination as to whether there was any damage shown in the photographs. As the corporate representative, he stated: "I'm able to respond to -- if you identify some type of damage, or if you see something that you claim is damaged and whether -- what the company's position is on that." ECF No. 84-4, Lacombe Aff. at 68:7–11. He later stated again that his role meant he could only "tell you the company's position." Id. at 73:10–13. Even though UPC did not use an outside damages expert, UPC did not need to prepare Lacombe on whether the photographs showed damages because UPC claimed

that they relied on someone else to make that determination—specifically, Vladimir Chery ("Chery"), a claims adjuster at UPC.  If Couture wanted to question UPC on whether they validly used the photographs to determine that there were preexisting damages, Couture's best line of inquiry appears to be with Chery—in fact, it appears Couture previously deposed him.  See generally ECF No. 70-10, Chery Dep.  Since the record presented by UPC does not indicate that Lacombe was wholly unprepared to answer questions relating to UPC's basis for denying Couture's claim, the court denies Couture's motion to compel related to these topics.

### 2. Topic Nos. 3 and 4

Couture next seeks to compel additional testimony related to the following topics:

3. Industry standard guidelines applicable to the claims handling of Plaintiff in South Carolina and/or Defendant Couture's claim.

4. Any rules, standards, or regulations that apply to Plaintiff and the handling of Defendant Couture's claim.

ECF No. 80-2 at 5.

Couture argues that UPC did not file for a protective order on Topic No. 3, but Lacombe was nonetheless advised not to answer due to UPC's counsel's objections.  The court agrees, as it has already discussed, that UPC should have filed a motion for a protective order if it intended to object to all questioning on industry standard guidelines, and Couture's topic was stated clearly enough such that UPC should have been aware if it were objectionable.  Additionally, UPC failed to include this objection in its most recent motion for protective order.  Nevertheless, as the court discusses below, UPC's counsel did not raise a blanket objection to all questioning on the topic at the deposition.  Moreover, there is insufficient reason to compel additional testimony based on the responses themselves.

Couture's topic was clearly limited to the "[i]ndustry guidelines <u>applicable to the claims</u>." ECF No. 80-2 at 5 (emphasis added). Therefore, Lacombe was only required to testify to the guidelines UPC applied to Couture's claim. UPC's counsel agreed to as much when she stated on the record, "[s]o to the extent that Mr. Lacombe is here, and you want to ask him, what guidelines, policies, procedures, or standards applied to this particular claim for UPC, he can testify to that. He's prepared to testify to that." Lacombe Aff. at 190:21–25. The record indicates that Couture's counsel asked, as a general matter, whether "there [is] an industry standard in homeowner's policies as to whether the issuing insurance company does an inspection of the residence prior to issuance of the policy." <u>Id.</u> at 186:23–187:1. Based on a review of the transcript, Couture did not attempt to depose Lacombe on what industry standards were actually applicable to Couture's case.

Additionally, Couture argues that Lacombe was "unprepared to discuss" Topic No. 4—the rules, standards, or regulations that apply to Plaintiff and the handling of Defendant Couture's claim. In the deposition, Lacombe claimed that he is "not an attorney." ECF No. 82-4, Lacombe Dep. at 49:13. This response, on its own, is an insufficient defense. It is the corporation's responsibility, when responding to a notice of deposition made pursuant to Rule 30(b)(6), to prepare a designee so that he or she can give complete, knowledge, and binding answers. <u>Marker v. Union Fidelity Life Ins. Co.</u>, 125 F.R.D. 121, 126 (M.D.N.C. 1989). In other words, a 30(b)(6) corporate representative must be prepared to answer questions beyond his immediate knowledge. However, the court finds that Couture only inquired about general rules and regulations, without drawing Lacombe to a particular rule or whether it should have applied to

Couture's claim. The following exchange occurred between Couture's counsel and Lacombe:

> Q.   Do you believe there is a good faith effort required by UPC to resolve a claim?
>
> A.   I'm only aware of the specific requirements and the statute. And I don't believe it's phrased in the specific way that you've put it.
>
> Q.   Do you believe UPC should act in good faith and efforts to resolve claims?
>
> A.   Once again, I -- I can only confirm that UPC follows the laws as required by South Carolina.

Lacombe Dep. 47:22–48:7. Lacombe's final answer indicates that he was willing to answer questions about which South Carolina laws UPC followed in handling Couture's claim. However, Couture moved on to another line of questioning. Since Couture's deposition questions departed from the line of questioning indicated in Topic Nos. 3 and 4, the court denies Couture's motion to compel additional testimony on them.

### 5. Topic No. 28

Finally, Couture requests additional testimony on Topic No. 28, which requests:

> 28. The organization and business structure of Plaintiff, including corporate structure and ownership, from 2017 to present.

ECF No. 80-2 at 6. Couture draws the court's attention to the following exchange:

> Q.   Okay. Did you do any investigation into the organization and business structure of UPC, including corporate structure and ownership from 2017 to present?
>
> A.   Did I do an investigation?
>
> Q.   Did you look into that prior to today?
>
> A.   I'm aware of, I guess, where the company is headquartered and, I guess, the leadership team.
>
> Q.   Did you do anything else to investigate topic number 28 on the Notice of Deposition?

17

>  A. What's topic 28? Yeah. I didn't do an investigation, as you -- as you've said.

Lacombe Dep. 281:9–21.  Later, Lacombe was asked where the company is organized, and he indicated he did not know the meaning of "organized" for those purposes.  Id. at 282:7–12.

The court does not believe that the purported deficiencies in Lacombe's testimony as to Topic No. 28 necessitate reconvening the deposition.  As the court already discussed, when the information sought appears to be discoverable by other means, it need not come from a 30(b)(6) deponent.  Proa, 2008 WL 11363286, at *14.  Counsel for Couture acknowledged that this information appears to be available from 10-K forms and other corporate disclosures.  If Couture seeks information from UPC on where it is organized and on other issues pertaining to corporate structure, that information is clearly available in other forms.  Moreover, Couture has failed to describe with any particularity the relevance of determining where UPC is organized such that it would justify reconvening a deposition.  Therefore, the court denies the motion to compel testimony on Topic 28.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for protective order and **DENIES** the motion to compel.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**November 4, 2021
Charleston, South Carolina**