# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| UNITED PROPERTY & CASUALTY INSURANCE, ) ) ) | |
| Plaintiff, ) ) | No. 2:19-cv-01856-DCN |
| vs. ) ) | **ORDER** |
| ALLEN P. COUTURE, ) ) | |
| Defendant. ) ) | |

This matter is before the court on defendant Allen P. Couture's ("Couture") motion for reconsideration, ECF No. 102. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This insurance dispute arises out of a homeowner's insurance policy (the "Policy") between an insurer, plaintiff United Property & Casualty Insurance's ("UPC"), and its former insured, Couture, covering Couture's primary residence located at 1344 Winterberry Avenue, Goose Creek, South Carolina (the "Residence"). Prior to purchasing the Residence, Couture had an inspection performed on August 29, 2018 that unearthed several issues, including damage to the subflooring in multiple locations and faulty shut-off valves that caused the plumbing underneath the laundry room and kitchen to leak (the "First Inspection Report"). ECF No. 90-2. After the seller of the Residence (the "Seller") purported to fix those issues, Couture had a second inspection performed on September 21, 2018. The second inspection found all repairs to the "Plumbing System," including to the shut-off valves, to be "satisfactory"; however, it also noted that

1

certain repairs to the subflooring in the master bathroom and kitchen "d[id] NOT appear to be adequate" because the subflooring remained "deteriorated" (the "Second Inspection Report," also referred to as the "reinspection report"). ECF No. 90-4 at 12, 14 (emphasis in original). The Seller subsequently agreed to hire a contractor to make all the outstanding repairs. ECF No. 91-2, Couture Aff. ¶¶ 10–11. The contractor completed these repairs, and on October 3, 2018, wrote a letter to the Seller summarizing the repairs that were done. On October 5, 2018, Couture filed an application for a homeowner's insurance policy with UPC. ECF No. 90-7. The application included a question asking if the Residence had any "unrepaired or existing damage," to which Couture responded, "No." Id. at 4. UPC granted the application and issued the Policy to Couture with the policy period beginning on October 15, 2018 and continuing through October 15, 2019. ECF No. 90-8.

According to the complaint, on March 17, 2019, Couture became aware of a leak in the laundry room's water supply line that caused significant water damage to the subflooring and walls of the laundry room and caused the kitchen cabinets to become "warped and swollen." Couture Aff. ¶ 15. As a result, Couture filed a claim under the Policy. On March 22, 2019, UPC sent Michael Howell ("Howell")—a third-party field adjuster at the independent adjusting firm Worley Claims Services (now known as Alacrity Claims)—to perform a field inspection of the Residence. After receiving the inspection report from Howell, UPC denied Couture's claim by letter dated April 4, 2019, reasoning that the claimed damages "appear as a result of long-term water and mold damage prior to your policy inception date, and are considered pre-existing damages prior to the policy term." ECF No. 90-11 at 2. On April 9, 2019, UPC sent Couture a

second letter cancelling the Policy due to a material misrepresentation of fact, based on Couture's answer on the Policy application that the Residence was free of "unrepaired or existing damage." ECF No. 90-13 at 3. On May 2, 2019, UPC sent Couture a third letter regarding its denial of the claim. ECF No. 90-15.

On June 28, 2019, UPC filed this declaratory judgment action, asking the court to declare that Couture is not entitled to coverage under the Policy for claimed damages to the Residence. ECF No. 1, Compl. On August 8, 2019, Couture answered the complaint and asserted counterclaims for breach of contract, bad faith, and negligence/negligence per se. ECF No. 5. On March 3, 2022, the court entered an order on the parties' respective motions for summary judgment. ECF No. 101. The court's summary judgment order granted in part and denied in part UPC's motion for summary judgment and denied Couture's motion for summary judgment. As a result of the court's order, the claims remaining are UPC's declaratory judgment claim and Couture's counterclaims for breach of contract and negligence as to UPC's alleged failure to reasonably investigate the Residence before the inception of the Policy.

On April 1, 2022, Couture filed his motion for reconsideration. ECF No. 102. On April 29, 2022, UPC responded in opposition. ECF No. 106. Couture did not file a reply, and the time to do so has now expired. As such, the motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Federal Rule of Civil Procedure 54(b) is the proper avenue by which a party may seek reconsideration of an interlocutory order.[1] Spill the Beans, Inc. v. Sweetreats, Inc., 2009 WL 2929434, at *1 (D.S.C. Sept. 8, 2009).  Rule 54(b) provides that:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) (citations omitted); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge").  Compared to motions under Rule 59(e) for reconsideration of final judgments, "Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." Carlson v. Bos. Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (citation omitted).

"The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion" but has noted that Rule 54(b) motions "are 'not subject to the strict

---

[1] The parties correctly note that Federal Rule of Civil Procedure 54(d) applies, and to further clarify, the summary judgment order is not a final order such that Rule 59(e) applies because it dismissed less than all claims in this action.

standards applicable to motions for reconsideration of a final judgment.'" Ashmore v. Williams, 2017 WL 24255 at *2 (D.S.C. Jan. 3, 2017) (quoting Am. Canoe Ass'n, 326 F.3d at 514). "In this regard, district courts in the Fourth Circuit . . . look to the standards of motions under Rule 59 for guidance." Id. (citations omitted). Therefore, Rule 54(b) reconsideration is appropriate "(1) to follow an intervening change in controlling law; (2) on account of new evidence [discovered during litigation as opposed to after the judgment]; or (3) to correct a clear error of law or prevent manifest injustice." Id. (citation omitted); Carlson, 856 F.3d at 324. Like a Rule 59(e) motion, a Rule 54(b) motion "may not be used merely to reiterate arguments previously rejected by the court." Sanders v. Lowe's Home Ctrs., LLC, 2016 WL 5920840, at *4 (D.S.C. Oct. 11, 2016) (citation omitted).

### III.   DISCUSSION

Couture requests that the court reconsider its order granting summary judgment in UPC's favor on Couture's counterclaim for bad faith and granting partial summary judgment in UPC's favor on Couture's counterclaim for negligence and negligence per se. Couture fails to specify which of the Rule 54(d) or 59(e) grounds for reconsideration are satisfied in his motion, and the court must assume that Couture's justification for the motion is to correct a clear error of law or prevent manifest injustice. The court considers Couture's argument under each of the two counterclaims at issue, ultimately concluding that Couture is not entitled to relief on his bad faith counterclaim but is entitled to relief on his negligence counterclaim.[2]

---

[2] UPC briefly contends that Couture's motion is untimely because it was filed twenty-nine days after the court's summary judgment order, and under Rule 59(e), a motion to alter or amend must be filed no later than twenty-eight days after entry of

### A. Bad Faith Counterclaim

In his motion to reconsider, Couture first disputes the court's finding that he failed to establish the elements of his bad faith counterclaim as a matter of law. In the court's summary judgment order, the court determined that viewing the evidence in the light most favorable to Couture, no reasonable finder of fact could have found for Couture on his bad faith claim. In his motion, Couture argues that although the court applied the proper standard, it erred in reaching that conclusion. Specifically, Couture submits that his expert, Lauraleigh Weaver ("Weaver"), was the only expert to weigh in on the issue, and Weaver concluded that UPC had acted in bad faith in no less than seven different ways. ECF No. 102 at 3 (citing ECF No. 92-3 at 9–11)

As a preliminary matter, Couture invokes Weaver's expert report to support his bad faith counterclaim for the very first time in his motion to reconsider. In his response to UPC's motion for summary judgment on that counterclaim, Couture failed to cite the report; instead, his argument focused exclusively on whether there were preexisting damages at the Residence. See ECF No. 92 at 20. Couture argued that since there were new, unknown damages, UPC acted in bad faith by denying coverage. He did not argue—as he does now via Weaver's report—that UPC committed other acts in bad faith, such as by allegedly referring to irrelevant Policy exclusions in its letters to Couture declining coverage. See ECF No. 102 at 3. Motions to reconsider "may not be used . . . to raise arguments or present evidence that could have been raised prior to the entry

---

judgment. In contrast, however, courts have held that "Rule 54(b) contains no express deadline for filing such a motion and . . . such motions may be resolved at any time prior to the entry of a final judgment." Howard v. W. Va. Div. of Corrs., 2016 WL 1173152, at *5 (S.D. W. Va. Mar. 22, 2016). Couture's motion for reconsideration is thus timely.

of judgment." Melendez v. Sebelius, 611 F. App'x 762, 764 (4th Cir. 2015) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008)).  While Couture argues that Weaver's "expert report was previously provided to the Court in response to UPC's Motion for Summary Judgment," ECF No. 102 at 3, Couture failed to direct the court to Weaver's report in the context of the bad faith counterclaim.  Instead, in his response to the motion for summary judgment, Couture cited Weaver's report for her conclusion that the coverage was triggered by an occurrence and Couture's claim was improperly denied. ECF No. 92 at 15, 17 (citing ECF No. 92-3).  As the Fourth Circuit has now repeatedly explained, judges "are not like pigs, hunting for truffles buried in briefs.  Similarly, it is not our job to [] make arguments for either party."  Hensley v. Price, 876 F.3d 573, 581 (4th Cir. 2017).  Couture's failure to raise his arguments in a timely manner provides reason alone to dismiss his motion to reconsider.

Nevertheless, even if the court considers the merits of Couture's new arguments regarding bad faith, it would still deny Couture's motion.  "An insurer acts in bad faith where there is no reasonable basis to support the insurer's decision."  Doe v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n, 557 S.E.2d 670, 674, (S.C. 2001) (emphasis added).  In arguing that it had a reasonable basis to support its decision, "an insurer cannot merely rely upon the results of its own investigation to insulate itself from summary judgment, because doing so would 'effectively insulate[] the insurer from liability' and 'foreclose[] a jury consideration of the insured's evidence of bad faith.'" Snyder v. State Farm Mut. Auto Ins. Co., 586 F. Supp. 2d 453, 460 (D.S.C. 2008) (quoting Varnadore v. Nationwide Mut. Ins. Co., 345 S.E.2d 711, 713 (S.C. 1986)) (alterations in original).  However, summary judgment is appropriate where the insurer

can prove that its actions were reasonable based "on all the evidence available in the case as well." Id.  In the summary judgment order, the court determined that after UPC considered external inspection reports and photographs from the third-party adjuster, UPC had an objectively reasonable ground for contesting coverage based on UPC's belief that the damages were present prior to the date of the issuance of its policy.  Other courts applying South Carolina law have similarly granted motions for summary judgment on bad faith claims where the court was able to identify a reasonable basis for an insurer's decision.  See Remick v. Travelers Home & Marine Ins. Co., 2022 WL 801871, at *5 (D.S.C. Feb. 24, 2022) (holding that there was no bad faith in denying coverage when there was an objectively reasonable basis for the decision); BMW of N. Am., LLC v. Complete Auto Recon Servs., Inc., 731 S.E.2d 902, 907 (S.C. Ct. App. 2012) (same); Shiftlet v. Allstate Ins. Co., 451 F. Supp. 2d 763, 772 (D.S.C. 2006) (same).  Relatedly, in scenarios where courts concluded that there was a genuine issue of material fact as to whether coverage was owed—suggesting that the issue was far from certain at the time the decision on coverage was made—courts have determined that there was no bad faith as a matter of law.  See Remick, 2022 WL 801871, at *5 (finding that the coverage issue was "sufficiently complex such that it cannot be said that Defendant knowingly failed to exercise an honest and informed judgment in processing the claim"); Dan Ryan Builders W. Va., LLC v. Main Street Am. Assurance Co., 452 F. Supp. 3d 411, 427 (D.S.C. 2020) ("Based on . . . the lengthy analysis above, [the insurer] had reasonable grounds for its conclusion that [the plaintiff] was not an additional insured . . . .").  Such is the case here. See ECF No. 101 (denying motion for summary judgment on coverage issue).

Additionally, the court notes that even with Weaver's report, Couture's counterclaim remains unsupported by evidence of bad faith. Courts have explained that bad faith claims require "evidence beyond mere assertions and inferences." Snyder, 586 F. Supp. 2d at 460; see also Imperial Textile Supplies, Inc. v. Peerless Indem. Ins. Co., 2012 WL 13008425, at *4 (D.S.C. Nov. 5, 2012) (granting the defendant's summary judgment on the plaintiff's bad faith claim because the evidence of bad faith was entirely speculative or inadmissible); Crossley v. State Farm Mut. Auto. Ins. Co., 415 S.E.2d 393, 398 (S.C. 1992) (reversing the trial court's denial of State Farm's motion for directed verdict on the respondent's good faith claim because the court could "discern no evidence to support respondent's claim that State Farm breached its implied covenant of good faith under the contract"). To be sure, the court's role is not to weigh the evidence at the summary judgment stage, but the court need not weigh the credibility of the report to find that the report does not raise any independently-documented evidence of bad faith. Weaver provides an opinion on the reasonableness of UPC's reliance on the documents in its possession and of its subsequent response to Couture's claim. See ECF No. 92-3 at 7 (evaluating denial of coverage letters and opining that UPC "did NOT address the ensuing loss to property"); id. at 9 ("[I]t seems the review of the supporting documents from Rytech, Step by Step Inspections, and Your Friend The Plumber, was incomplete."). Such an opinion may certainly be probative, but it cannot replicate or replace evidence of bad faith. Cf. Brown v. Johnson, 275 S.E.2d 876, 878 (S.C. 1981) (noting that arguments made by counsel are not a substitute for evidence of bad faith). Thus, in the absence of independent evidence of bad faith, the expert report fails to move the needle in favor of amending the court's prior order.

Additionally, the court does not find it manifestly unjust to grant summary judgment in UPC's favor on Couture's bad faith counterclaim because Couture has failed to plead and prove consequential damages. An insured may bring a "cause of action for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third party claims." Id. (emphasis added); see also Brown v. S.C. Ins. Co., 324 S.E.2d 641, 647 (S.C. 1984), overruled on other grounds by Charleston Cnty. Sch. Dist. v. State Budget & Control Bd., 437 S.E.2d 6 (S.C. 1993) (citing Kline Iron & Steel Co. v. Superior Trucking Co., 201 S.E.2d 388 (1973)) ("As with special damages in any contract action, the plaintiff must specially plead and prove consequential losses flowing from breach of the implied covenant of good faith and fair dealing."). For example, the Fourth Circuit, analyzing South Carolina law, has found that consequential damages may be used to compensate for emotional distress damages alleged in an action for bad faith refusal to pay. See State Farm Fire & Cas. Co. v. Barton, 897 F.2d 729, 732–33 (4th Cir. 1990). Here, however, the complaint alleges, under the bad faith counterclaim, that Couture was "damaged by Plaintiff's failure to properly adjust this claim" and further alleges that he is entitled to consequential damages, among other damages. ECF No. 5, Ans. & Counterclaims ¶ 57. Thus, Couture alleges that he suffered the same exact injury from UPC's bad faith as the injury he suffered from UPC's breach of contract. Therefore, fatally, the complaint does not allege any "non-economic consequential damages [that] were proximately caused by the insurance company's failure to pay." Barton, 897 F.2d at 733. Although the court did not have an occasion to

raise this defect with Couture's counterclaim in its prior order, it does so now to further conclude that it was not manifest injustice to grant summary judgment in UPC's favor.

### B. Negligence Counterclaim

Next, Couture argues that the court committed an error by partially granting UPC's motion for summary judgment on Couture's negligence counterclaim. In the court's summary judgment order, the court held that Couture could proceed on his negligence counterclaim as it relates to his allegation that UPC failed to reasonably investigate the Property prior to the inception of the Policy as it had allegedly represented that it would do. However, the court granted summary judgment in UPC's favor as to all other allegations of negligence and negligence per se.[3] As the court explained in the summary judgment order, some of these allegations of negligence were directly tied to UPC's alleged failure to perform under the Policy, and courts in South Carolina have dismissed negligence claims that are based solely on an insurer's failure to perform under an insurance policy. ECF No. 101 at 27 (citing Felder v. Great Am. Ins. Co., 260 F. Supp. 575, 578–79 (D.S.C. 1966)). Couture does not dispute the court's conclusion as it relates to those allegations. Next, the court determined that there was no genuine dispute of material fact as to Couture's allegations that UPC negligently compelled Couture to institute a suit and knowingly misrepresented the Policy's provisions to Couture. The court also observed that it had failed to encounter a case recognizing a negligence cause of action for compelling another to institute a suit. Couture similarly does not contest the

---

[3] The full list of those allegations is reproduced on page twenty-six of the court's summary judgment order. ECF No. 101 at 26.

court's findings as it relates to those allegations of negligence, and the court does not find that ruling manifestly unjust.

Finally, the court determined that there was no genuine dispute of material fact as to Couture's allegation that UPC failed to reasonably investigate Couture's claim <u>after Couture submitted it</u>. However, the court determined that there was a genuine dispute of material fact as to whether UPC reasonably investigated the Residence <u>prior to the inception of the Policy</u>. In his motion for reconsideration, Couture challenges the former finding, arguing that Weaver's report "outlines specifically how UPC failed to properly investigate the Couture claim." ECF No. 102 at 4 (citing ECF No. 92 at 14).

Again, in his response to UPC's motion for summary judgment, Couture did not specifically mention Weaver's report under his argument regarding his negligence counterclaim. In fact, Couture did not raise the argument that UPC acted negligently in its <u>post-claim</u> investigation at all. Instead, in that section, Couture argued that he "was prejudiced by Couture's failure to properly investigate the Residence prior to submitting his application for insurance." <u>See</u> ECF No. 92 at 20–21. Nevertheless, the court acknowledges that in his "Background and Relevant Facts" section, Couture cited Weaver's conclusion that UPC had failed to reasonably investigate the claim. The court finds that this is one of the rare instances where the interlocutory nature of the motion lends itself to a degree of latitude. The court, in its discretion, will consider Weaver's report in the context of UPC's alleged failure to investigate Couture's claim.

Weaver's report introduces new considerations that were not reflected in the court's summary judgment order. The court determined, in its summary judgment order, that UPC had presented sufficient evidence of its investigative efforts. First, UPC sent a

water mitigation specialist from Rytech to the Residence on March 19, 2019. ECF No. 91-6 at 1. Second, UPC sent Howell, the third-party field adjuster, to take photographs at the Residence on March 22, 2019. ECF No. 91-7, Howell Dep. at 6:17–20. Here, Weaver's report observes that UPC's review of Rytech's documents was incomplete because a reasonable person in UPC's position would have noticed through the photographs that there were moisture meters placed in the Residence that detected "active moisture levels." ECF No. 92-3 at 9. The attendant weight to give to the moisture meter readings, if any, is beyond the court's purview. Viewed in the light most favorable to Couture, a reasonable juror could conclude that UPC had failed to reasonably investigate Couture's claim. As such, the court amends its prior order and denies UPC's motion for summary judgment on Couture's counterclaim for failure to investigate the claim. As a result, Couture will be permitted to proceed on his negligence counterclaim under both a theory that UPC failed to investigate the claim before the inception of the Policy and after Couture submitted his claim. The court must emphasize that this ruling should not be read as condoning the submission of new arguments after a litigant had the opportunity to do so. While Couture did not explicitly raise the argument in his response to UPC's motion for summary judgment, the court finds that Couture sufficiently referenced it, and given that this case is not on the precipice of trial, the court finds that an interlocutory order amending its prior ruling is appropriate given these circumstances to avoid manifest injustice.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** Couture's motion for reconsideration.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 8, 2022**
**Charleston, South Carolina**

14